UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| B&W PAVING & LANDSCAPE, LLC,<br><br>    *Plaintiff,*<br><br>    *v.*<br><br>EMPLOYERS MUTUAL CASUALTY CO.,<br><br>    *Defendant.* | Civil No. 3:21-cv-01624<br><br>December 15, 2022 |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff B&W Paving and Landscape, LLC is a paving company that was insured by Defendant Employers Mutual Casualty Co. for work done as a subcontractor for the Whiting Turner Contracting Company ("WT"), who filed a third-party complaint against Plaintiff. Plaintiff looks to Defendant to provide its defense, which Defendant has refused. Plaintiff seeks a declaratory judgment that Defendant's duty to defend has been triggered (Count One) and alleges breach of contract due to failure to provide a defense (Count Three).[1] Plaintiff and Defendant have cross-moved for summary judgment on Counts One and Three. [Doc. ## 28, 29].

As set out below, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's motion for summary judgment.

**I.      Background**

---

[1] The remaining counts are not implicated in the pending motion. Count Two seeks a declaratory judgment that Defendant has a duty to indemnify. Count Four alleges breach of contract for failure to indemnify.

In 2010, WT contracted with the United Illuminating Company ("UI") to act as general contractor and construction manager for the construction of UI's new central facility. (Joint Loc. R. 56(a)(1) Stmt. [Doc. # 28-2] ¶ 3.) WT then subcontracted with Cherry Hill Construction, Inc. ("Cherry Hill") for work in the areas of the site underneath the parking lot and driveways, including installing base and subbase materials. (*Id.* ¶ 4.) In 2011, WT also subcontracted with Plaintiff for the asphalt paving. (*Id.* at ¶ 5.) Plaintiff was insured by a commercial general liability policy from Defendant. (Id. ¶ 13.)

In 2018, UI sued WT for defective and incomplete work ("the underlying action"). (*Id.* ¶ 10.) WT then filed a third-party complaint against its subcontractors, including Plaintiff. (*Id.* ¶ 11.) The two counts against Plaintiff concern 1) any liability WT may have to UI for "[a]llegations that B&W Paving installed an insufficient quantity of asphalt or otherwise improperly and/or incompletely installed asphalt for the parking lots and driveways" of UI and 2) to the extent WT is held liable for any loss sustained by UI that was proximately caused by the "active and primary negligence of B&W" or liability "to the extent [WT] is held liable for conduct caused by the acts and/or omissions of B&W." (*Id.* ¶ 12.)

In 2015, prior to suit, UI retained Arcadis to prepare a report on the construction. (*Id.* ¶ 6.) Arcadis found that the asphalt in certain areas did not meet specifications and most of the base and subbase materials also did not meet specifications. (*Id.*) Cherry Hill then retained RRR Engineering, whose report found that the base and subbase did not strictly meet specifications, but it would not be "unreasonable to consider base and subbase grain size distributions were suitable upon placement." (*Id.* ¶ 7.) Plaintiff retained HAKS Engineers, P.C., whose report found that in isolated areas pavement thickness did not meet specifications, but where the pavement had deteriorated to the point of needing to be replaced it was of adequate thickness, and in certain locations the base and subbase gradation was out of spec. (*Id.* ¶ 8.) After suit was filed, WT retained GZA GeoEnvironmental, Inc, who found that "thinner asphalt paving layers at the UI Operations and Office sites have

2

likely contributed to the detrimental intrusion of water into the underlying granular base and subbase courses resulting in an associated reduction in structure strength," opining "that the deficient paving thickness [has] thus in some degree contributed to the detrimental effects on the base and subbase materials and the pavement structure deficiencies noted in the driveway and parking lot claim asserted by United Illuminating." (*Id.* ¶ 9.)

After suit was filed, Defendant declined Plaintiff's request for defense, claiming there was no coverage for the claims made by WT's third-party complaint. (*Id.* ¶ 22.) In 2020, Plaintiff asked Defendant to reconsider its position because GZA was representing that the thinness of the Plaintiff's asphalt resulted in advanced water seepage through the asphalt and caused damage to the substrate levels of the compacted soil (*Id.* ¶ 23), and "property damage" from defective construction work by the insured includes damage caused to other, non-defective property. *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 784-85, 787 (2013). After receiving GZA's written assessment, Plaintiff again contacted Defendant, who again denied Plaintiff a defense. (Joint Loc. R. 56(a)(1) Stmt. ¶¶ 24-25.)

## II.   Discussion

"An insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage." *Travelers Cas. & Surety Co. of Am. v. Netherlands Ins. Co.*, 312 Conn. 714, 739 (Conn. 2014).[2] "Because all that is necessary to trigger an insurer's duty to defend is a possibility of coverage, any uncertainty as to whether an alleged injury is covered works in favor of providing a defense to an insured." *Nash St., LLC v. Main St. Am. Assurance Co.*, 337 Conn. 1, 10 (Conn. 2020). "An insurer is relieved of its duty to defend only if it can establish as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify the insured under any policy provision." *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 472 n.28 (Conn. 2005).

---

[2] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

Furthermore, an insurer who wishes to rely on a policy exclusion to negate any duty to defend "has the burden of demonstrating that the allegations of the underlying complaint cast that pleading solely and entirely within the policy exclusions and, further, that the allegations, *in toto*, are subject to no other interpretation," *Vt. Mut. Ins. Co. v. Ciccone*, 900 F. Supp. 2d 249, 259 (D. Conn. 2012). Here too "uncertainty works in favor of providing a defense to an insured." *Nash*, 337 Conn. at 21 n.9. "[I]f the allegations contained within an underlying complaint fall even possibly within the coverage and therefore, even possibly outside of the relevant insurance policy exclusions, an insurer must defend." *Vt. Mut.*, 900 F. Supp. 2d at 259.

In determining whether there is a duty to defend, courts may consider information that is extrinsic from the complaint. *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 467 (Conn. 2005). An insurer has a duty to defend "when it has actual knowledge of facts establishing a reasonable possibility of coverage". *Id.* However, "reliance on extrinsic facts [is] permitted only if those facts support the duty to defend." *Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 308 Conn. 146, 161 (Conn. 2013).

## A. Duty to Defend

The parties do not contest that for coverage purposes "property damage" from defective construction work by the insured only includes damage caused to other, non-defective property, and does not extend to repairing or replacing the insured's defective work. *Capstone Bldg. Corp.*, 308 Conn. at 784-85, 787. Instead, their dispute turns on whether the extrinsic fact of GZA's conclusions, in combination with the underlying complaint, triggered the duty to defend.

As an initial matter, the parties disagree about whether the Court should consider the GZA report. Defendant argues that the GZA statement is not sufficiently rigorous for the Court to consider because it offers opinions rather than facts and that the other expert reports indicate that Cherry Hill's work may have been defective. (Def.'s Mem. [Doc. # 29-1]

4

at 14-2.) Plaintiff argues in favor of considering the GZA statement, particularly because it raises the possibility of coverage, sufficient to trigger the duty to defend (Pl.'s Mem. [Doc. # 28-1] at 10-12; Pl.'s Opp'n [Doc. # 31] at 3-4.)

Courts have relied on analogous evidence when considering the duty to defend. Defendant's attempt to draw a line between extrinsic "facts" that objectively and clearly establish coverage, which it agrees may be considered, and other types of evidence is not borne out by cases where courts have relied on extrinsic evidence to determine if there was a duty to defend. (Def.'s Mem. at 17-20.) In *Hartford*, the court had to determine whether the defendant insurer had access to sufficient extrinsic information that the defendant in the underlying suit was an employee of the insured, such that the duty to defend would be triggered, where the complaint did not specifically state that the individual was an employee of the insured. *Hartford*, 274 Conn. at 465-467. The court determined that extrinsic "information indicat[ed] that Wylie was an employee of Strictly Dirt, and hence within the definition of 'insured' in the policy," including applications for insurance stating that Wylie would operate the Strictly Dirt store and listing Wylie as a contact. *Id.* at 467. The court did not require that this information be externally validated or its credibility be otherwise assessed, nor did it require that the information make an explicit, incontrovertible statement that Wylie was an employee. Instead, the court explained that this information "should have alerted the defendant to the fact that there was *at least a possibility* that Wylie was an employee of Strictly Dirt;" relevant was the fact that this information existed, not the information's validity. *Id.* (emphasis added)*.* Here the relevant fact is not the truth of GZA's conclusion that defects in B&W's work caused damage to Cherry Hill's work but the fact that an expert was able to reach such a conclusion, thereby creating the possibility of coverage. *See Bd. of Educ. of City of Bridgeport v. St. Paul Fire & Marine Ins. Co*., 261 Conn. 37, 49-50 (Conn. 2002) ("[w]hile the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial. . . ."). This

relatively broad approach to extrinsic evidence is consistent with the fact that the duty to defend depends on the *possibility* of liability, not the certainty of liability. *See Travelers Cas.*, 312 Conn. 714, 739 (explaining that the duty to defend is unrelated to the ultimate liability of the insured).  The Court concludes that the GZA report should be considered in resolving the pending motions.

The parties also disagree about whether the underlying complaint and the GZA statement together trigger the duty to defend. Plaintiff, relying on *Phoenix Insurance Co. v. Ragnar Benson Construction* LLC, 404 F. Supp. 3d 427 (D. Mass. 2019) ("*Ragnar*"), argues that the possibility that B&W's work could have damaged non-defective work done by Cherry Hill triggers the duty to defend. (Pl.'s Mem. at 10-12.) Defendant argues that there is no duty to defend because the underlying third-party complaint does not specify that Plaintiff's work damaged Cherry Hill's non-defective work, instead broadly alleging property damage caused by Plaintiff.  (Def.'s Mem at 8-13.)  It also argues that because "there is no consensus" among the expert reports that Plaintiff's work caused property damage to Cherry Hill's non-defective work, the GZA report cannot be the basis for finding that the underlying complaint contains the possibility of such a claim. (Def.'s Opp'n [Doc. # 32] at 5-6.)

In the Court's view, the underlying complaint in conjunction with the GZA opinion triggered Defendant's duty to defend. The underlying complaint claims paving-related losses sustained by UI due to B&W's defective work and states that B&W must indemnify WT for any claims brought by UI. (Underlying Complaint [Doc. # 28-11] ¶ 34, 37.) The GZA statement opinions on UI's losses at least arguably include losses caused by B&W's work damaging the work of Cherry Hill. (GZA letter [Doc. # 28-9].) This suffices to find that the allegations in the complaint fall "even possibly" within the scope of Plaintiff's coverage,  triggering the duty to defend, *Travelers Cas.*, 312 Conn. at 739, particularly when "any uncertainty as to whether an alleged injury is covered works in favor of providing a defense to an insured," *Nash*, 337 Conn. at 10.

6

Defendant's arguments to the contrary are unavailing. The fact that the underlying complaint does not specifically identify damage to Cherry Hill's non-defective work does not mean that such damage falls outside the scope of the complaint. Defendant's argument that for the duty to defend to be triggered, WT must have specifically named covered forms of damage in the underlying complaint misapprehends the basis for determing the duty to defend. "The duty to defend derives from the insurer's contract with the insured, not from the complaint." *Hartford*, 274 Conn. at 467. Furthermore, it would not be reasonable to assume that a litigant has the ability to make such fine-grained assessments of damage at the time of filing its complaint. Indeed, as Plaintiff noted at oral argument, the underlying complaint is broad in both its claims and the defendants named because it was not apparent at the time of filing what the exact cause or scope of the damages was. The content of the other expert reports also is not persuasive, particularly because triggering the duty to defend requires that the insured establish only the possibility of coverage, not certainty of coverage. *Travelers Cas.*, 312 Conn. at 739. Moreover, extrinsic evidence is considered only if it "support[s] the duty to defend," which the other reports that Defendant relies on do not. *Misiti*, 308 Conn. at 161.

### B.  Policy Exclusions

Defendant also argues that it does not have a duty to defend because two coverage exclusions apply. (Def.'s Mem. at 20-25.) The first exclusion is the "property damage" exclusion, which excludes coverage for "property damage that directly or consequentially occurs from the faulty workmanship of the insured and its contractors/subcontractors (i.e., work that was incorrectly performed) while the work is ongoing." *Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc.*, 10 F. Supp. 3d 252, 268 (D. Conn. 2014). The property damage exclusion does not apply to damage caused after work is completed. *Id.* The second exclusion is the "your work" exclusion, which excludes coverage for damage caused by the insured to the insured's own work. *Capstone Bldg. Corp.,* 308 Conn. at 789-90.

7

Plaintiff argues that because the property damage exclusion does not apply to damage caused after the work was completed, and the GZA report refers to damage caused to Cherry Hill's work by water seepage after the conclusion Plaintiff's work, Defendant has not met its burden to show there is no possibility the exclusion is applicable. (Pl.'s Mem. at 15.) Plaintiff likewise argues that the "your work" exclusion does not apply because of the possibility of damage to Cherry Hill's work. (*Id.* at 17.) Defendant does not dispute Plaintiff's interpretation of the scope of the exclusions but repeats its arguments that the GZA report should not be considered and it does not raise the possibility of coverage. (Def.'s Opp'n at 9-10.) For the reasons detailed above, the Court, considering the GZA report, finds that the report and the complaint raise the possibility of coverage, as any uncertainty about whether a claim falls within the scope of an exclusion "works in favor of providing a defense to an insured." *Nash*, 337 Conn. at 21 n.9.

### III.    Conclusion

The Court GRANTS Plaintiff's motion for summary judgment on Counts One and Three and DENIES Defendant's motion for summary judgment on Counts One and Three.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 15th day of December, 2022